IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION

| | | |
|---|---|---|
| MAHESH SHASTRY f/k/a MAHESH GOPALAKRISHNA and SURYAKALA R. SHASTRY f/k/a SURYAKALA R. HOSANAGRA,<br><br>Plaintiffs,<br><br>V.<br><br>U.S. BANK NATIONAL ASSOCIATION, AS SUCCESSOR TRUSTEE TO WACHOVIA BANK NATIONAL ASSOCIATION AS TRUSTEE FOR WELLS FARGO ASSET SECURITIES CORPORATION, MORTGAGE PASS-THROUGH CERTIFICATES SERIES 2005-AR16,<br><br>Defendant. | § § § § § § § § § § § § § § § § § § § | No. 3:16-cv-3335-G-BN |

**FINDINGS, CONCLUSIONS, AND RECOMMENDATION OF THE
UNITED STATES MAGISTRATE JUDGE**

This case has been referred to the undersigned United States magistrate judge for pretrial management pursuant to 28 U.S.C. § 636(b) and a standing order of reference from Senior District Judge A. Joe Fish.

Plaintiffs Mahesh Shastry and Suryakala R. Shastry filed this case after Defendant U.S. Bank National Association foreclosed on their Coppell, Texas home. Plaintiffs allege that U.S. Bank breached multiple terms of the modified loan agreement.

-1-

U.S. Bank has now filed a motion for summary judgment. *See* Dkt. No. 74. Plaintiffs filed a response in opposition, *see* Dkt. No. 82, and U.S. Bank filed a reply, *see* Dkt. No. 89. U.S. Bank also filed objections to Plaintiffs' summary judgment evidence and a motion to strike that evidence. *See* Dkt. No. 88.

The Court held oral argument on January 29, 2020. *See* Dkt. No. 92. After reviewing the parties' arguments, the evidence, and the law, and with the benefit of the parties' oral argument, the undersigned recommends that the Court grant U.S. Bank's Motion for Summary Judgment [Dkt. No. 80].

## Background

In the fall of 2003, Plaintiffs purchased a home located in Coppell, Texas (the "Property"). They signed a promissory note to finance the purchase (the "Note") and secured the Note through a deed of trust, pledging their interest in the Property as security (the "Deed of Trust").

Compass Bank initially held the Note and Deed of Trust (collectively, the "Loan"). Compass Bank assigned the Loan to Wells Fargo Bank, N.A., which in turn assigned the Loan to U.S. Bank. *See* Dkt. No. 76, Ex. A ¶¶ 5-6.

In 2008, Plaintiffs fell behind on their mortgage. *See id.* ¶ 7. Although they were able to make some payments, the loan "remained in continuous default" from 2008 until 2011. *Id.* During this time, Wells Fargo also discovered that Plaintiffs had failed to pay property taxes and property insurance premiums. *See id.* ¶ 8. Wells Fargo paid the past due property taxes and insurance payments and created an escrow account for the Loan. *See id.*

In January 2011, Plaintiffs and Wells Fargo entered into a loan modification agreement (the "LMA"). *See id.* ¶ 9. Under the LMA, Plaintiffs agreed that

> [a]s of January 6, 2011, the new amount payable under the Note and the Security Instrument is U.S. $ 684,525.43 ("New Principal Balance"), consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized with this modification. $118,876.88 of the New Principal Balance shall be deferred (the "Secondary Principal Balance") and [they] will not pay interest or make payments on this amount.

Dkt. No. 76, Ex. A-3 ¶ 1.

Shortly after executing the LMA, Wells Fargo returned three of Plaintiffs' payments due to insufficient funds. *See id.* Ex. A ¶ 11. By June 2011, Wells Fargo declared Plaintiffs in default. *See* Dkt. No. 82-1, Ex. 1-L. Despite periodic payments, Plaintiffs remained in default from that point on. *See* Dkt. No. 76, Ex. A ¶ 11. Plaintiffs made their last payment on the loan in June 2016. *See id.*

Plaintiffs filed three bankruptcies after agreeing to the LMA. While the bankruptcies were pending, Plaintiffs continued to make some payments both directly and through the Trustee. *See* Dkt. No. 82 at 12.

In September 2015, Wells Fargo sent notice to Plaintiffs that the loan was in default. *See* Dkt. No. 76, Exs. B ¶ 4; B-1. It then sent two more notices in September 2016. *See id.* Ex. B ¶¶ 5-6. The first of these notices alerted Plaintiffs that the loan would be accelerated if not cured, *see id.* Ex. B-2, and the final notice stated that, because Plaintiffs had failed to cure the default, the property was scheduled for foreclosure sale, *see id.* Ex. B-3.

On September 19, 2016, Wells Fargo sent a letter responding to several inquiries Plaintiffs made regarding the LMA. *See id.* Ex. A-4. In the letter, Wells Fargo described the LMA's terms, chronicled Plaintiffs' payment history, and explained why it denied Plaintiffs' second loan-modification request. *See id.*

The Property was sold at the noticed foreclosure sale on November 1, 2016. *See* Dkt. No. 76, Ex. A ¶ 14. Plaintiffs have remained in possession of the Property since the foreclosure. *See id.*

Plaintiffs filed this lawsuit against U.S. Bank in state court on October 19, 2016. *See* Dkt. No. 1. In their Original Petition, Plaintiffs brought claims for breach of contract, to quiet title, and for injunctive relief. *See* Dkt. No. 1-7. After removing the case to this Court, U.S. Bank filed a motion to dismiss. *See* Dkt. No. 20. The Court granted the motion and dismissed Plaintiffs' claims for breach of contract and injunctive relief without prejudice and dismissed Plaintiffs' quiet title claim and request for declaratory relief with prejudice. *See* Dkt. Nos. 42, 48. Plaintiffs then filed their Amended Complaint, raising only a breach of contract claim. *See* Dkt. No. 52.

U.S. Bank now moves for summary judgment. *See* Dkt. Nos. 80, 81. U.S. Bank requests that the Court enter judgment on Plaintiffs' breach of contract claim because "there are no genuine issues of material fact warranting trial." Dkt. No. 81 at 5.

The undersigned agrees with this assessment and therefore recommends that the Court grant U.S. Bank's motion.

## Legal Standards

Under Federal Rule of Civil Procedure 56, summary judgment is proper "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A factual "issue is material if its resolution could affect the outcome of the action." *Weeks Marine, Inc. v. Fireman's Fund Ins. Co.*, 340 F.3d 233, 235 (5th Cir. 2003). "A factual dispute is 'genuine,' if the evidence is such that a reasonable [trier of fact] could return a verdict for the nonmoving party." *Crowe v. Henry*, 115 F.3d 294, 296 (5th Cir. 1997).

If the moving party seeks summary judgment as to his opponent's claims or defenses, "[t]he moving party bears the initial burden of identifying those portions of the pleadings and discovery in the record that it believes demonstrate the absence of a genuine issue of material fact, but is not required to negate elements of the nonmoving party's case." *Lynch Props., Inc. v. Potomac Ins. Co.*, 140 F.3d 622, 625 (5th Cir. 1998). "Summary judgment must be granted against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which it will bear the burden of proof at trial. If the moving party fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response." *Pioneer Expl., L.L.C. v. Steadfast Ins. Co.*, 767 F.3d 503, 511 (5th Cir. 2014) (internal quotation marks and footnote omitted).

"Once the moving party meets this burden, the nonmoving party must set forth" – and submit evidence of – "specific facts showing a genuine issue for trial and not rest upon the allegations or denials contained in its pleadings." *Lynch Props.*, 140 F.3d at

625; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc); *accord Pioneer Expl.*, 767 F.3d at 511 ("[T]he nonmovant cannot rely on the allegations in the pleadings alone" but rather "must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." (internal quotation marks and footnotes omitted)).

The Court is required to consider all evidence and view all facts and draw all reasonable inferences in the light most favorable to the nonmoving party and resolve all disputed factual controversies in favor of the nonmoving party – but only if the summary judgment evidence shows that an actual controversy exists. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986); *Pioneer Expl.*, 767 F.3d at 511; *Boudreaux v. Swift Transp. Co., Inc.*, 402 F.3d 536, 540 (5th Cir. 2005); *Lynch Props.*, 140 F.3d at 625. "The evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor. While the court must disregard evidence favorable to the moving party that the jury is not required to believe, it gives credence to evidence supporting the moving party that is uncontradicted and unimpeached if that evidence comes from disinterested witnesses." *Porter v. Houma Terrebonne Hous. Auth. Bd. of Comm'rs*, 810 F.3d 940, 942-43 (5th Cir. 2015) (internal quotation marks and footnotes omitted). And "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment," *Brown v. City of Houston*, 337 F.3d 539, 541 (5th Cir. 2003), and neither will "only a scintilla of evidence" meet the nonmovant's burden, *Little*, 37 F.3d at 1075; *accord Pioneer Expl.*, 767 F.3d at 511 ("Conclusional allegations and denials, speculation,

improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." (internal quotation marks and footnote omitted)).

Rather, the non-moving party must "set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). And "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Pioneer Expl.*, 767 F.3d at 511 (internal quotation marks and footnote omitted).

"After the nonmovant has been given an opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted." *DIRECTV, Inc. v. Minor*, 420 F.3d 546, 549 (5th Cir. 2005) (footnote and internal quotation marks omitted).

The Court will not assume "in the absence of any proof ... that the nonmoving party could or would prove the necessary facts" and will grant summary judgment "in any case where critical evidence is so weak or tenuous on an essential fact that it could not support a judgment in favor of the nonmovant." *Little*, 37 F.3d at 1075. "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment," and "[a] failure on the part of the nonmoving party to offer proof concerning an essential element of its case necessarily renders all other facts immaterial and mandates a finding that no genuine

issue of fact exists." *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006) (internal quotation marks omitted).

Federal Rule of Civil Procedure 56(e) requires an affidavit or declaration used to support or oppose a motion for summary judgment to (1) be made on personal knowledge; (2) set forth facts that would be admissible in evidence; and (3) show affirmatively that the affiant is competent to testify to the matters stated. *See* FED. R. CIV. P. 56(c)(4). Declarations asserting personal knowledge must include enough factual support to show that the declarant possesses that knowledge. *See Amie v. El Paso Ind. Sch. Dist.*, 253 F. App'x 447, 451 (5th Cir. 2007). Conclusory declarations cannot create fact issues to defeat a summary judgment. *See First Colony Life Ins. Co. v. Sanford*, 555 F.3d 177, 181 (5th Cir. 2009); *see also Amie*, 253 F. App'x at 451 (summary assertions or conclusory allegations in a declaration are simply not enough proof to raise a genuine issue of material fact). "[U]nsupported allegations or affidavits setting forth 'ultimate or conclusory facts and conclusions of law' are insufficient to either support or defeat a motion for summary judgment." *Galindo v. Precision Am. Corp.*, 754 F.2d 1212, 1216 (5th Cir. 1985); *see also Hugh Symons Grp. v. Motorola*, Inc., 292 F.3d 466, 468 (5th Cir. 2002).

If, on the other hand, "the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). The "beyond peradventure" standard imposes a "heavy" burden.

-8-

*Cont'l Cas. Co. v. St. Paul Fire & Marine Ins. Co.*, No. 3:04-cv-1866-D, 2007 WL 2403656, at *10 (N.D. Tex. Aug. 23, 2007). The moving party must demonstrate that there are no genuine and material fact disputes and that the party is entitled to summary judgment as a matter of law. *See, e.g.*, *Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003). On such a motion, the Court will, again, "draw all reasonable inferences in favor of the non-moving party." *Chaplin v. Nations Credit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002).

## Analysis

## I. Objections to Plaintiffs' summary judgment evidence and motion to strike.

Along with its Reply, U.S. Bank filed objections to Plaintiffs' summary judgment evidence and a motion to strike. *See* Dkt. No. 88. U.S. Bank argues that the Court should strike the Declaration of Mahesh Shastry because it is a "sham affidavit" that conflicts with prior testimony, and because it includes improper expert opinions and legal conclusions. *Id.* at 2-6. U.S. Bank also moves to strike several exhibits because they are not authenticated and were not produced during discovery. *See id.* at 6-10. Plaintiffs did not file a response to U.S. Bank's objections.

### A. Mr. Shastry's declaration is not a sham.

Under the "sham affidavit" rule, a party cannot "defeat a motion for summary judgment using an affidavit that impeaches, without explanation, sworn testimony." *S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 495 (5th Cir. 1996) (footnote omitted). The rule is "applied sparingly" and "not so inflexibly … that any affidavit

contradicting prior deposition testimony will be automatically disregarded." *Cruz v. R2Sonic, LLC*, 405 F. Supp. 3d 676, 684 (W.D. Tex. 2019); *see also Winzer v. Kaufman Cty.*, 916 F.3d 464, 472 (5th Cir. 2019) ("[N]ot 'every discrepancy' in an affidavit justifies a district court's refusal to give credence to competent summary judgment evidence."). That is because "slightly inconsistent affidavits may 'explain certain aspects of a party's deposition testimony.'" *Free v. Wal-Mart Louisiana, LLC*, 815 F. App'x 765, 766 (5th Cir. 2020) (quoting *Kennett-Murray Corp. v. Bone*, 622 F.2d 887, 894 (5th Cir. 1980)). And, "[w]hen an affidavit merely supplements rather than contradicts prior deposition testimony, the court may consider the affidavit when evaluating genuine issues in a motion for summary judgment." *S.W.S.*, 72 F.3d at 496.

"By contrast, if the affiant 'was thoroughly questioned' about the issue at the deposition and answered the questions 'unequivocally,' contradictory averments in the subsequent affidavit will not create a genuine dispute of material fact." *Hardesty v. Cochran*, 621 F. App'x 771, 778 (5th Cir. 2015) (footnote and alterations omitted) (quoting *Doe ex rel. Doe v. Dallas Indep. Sch. Dist.*, 220 F.3d 380, 386 (5th Cir. 2000)). That is, if an affidavit "tells the same story differently" such that "the deposition and affidavit are substantially different," then "the affidavit does not serve as a supplement to the deposition testimony," and the sham affidavit rule precludes the party from using the affidavit to create a genuine dispute of material fact. *S.W.S.*, 72 F.3d at 496.

U.S. Bank argues that two statements in Mr. Shastry's declaration conflict with his deposition testimony. First, U.S. Bank points to Mr. Shastry's statement in his

declaration that "Defendant's accounting on our mortgage is incorrect" and that "the escrow balance on [his] account should have been $0.00." Dkt. No. 82-1, Ex. 1 ¶ 17. U.S. Bank asserts that this statement conflicts with Mr. Shastry's earlier deposition testimony that he did not know "whether the escrow account balance was 'zero, negative or positive.'" Dkt. No. 88 at 3 (quoting Dkt. No. 76, Ex. C at 52:17-18).

Second, U.S. Bank points to Mr. Shastry's statement that the payments returned for insufficient funds "were due to [US Bank's] demands of excessive funds." Dkt. No. 82-1, Ex. 1 ¶ 17. U.S. Bank argues that this conflicts with Mr. Shastry's testimony that he "wouldn't know" if his initial payments under the LMA were returned for insufficient funds. Dkt. No. 88 at 3 (quoting Dkt. No. 76, Ex. C at 50:22-24).

Any conflict between Mr. Shastry's deposition testimony and declaration do not render the declaration a sham. Mr. Shastry gave equivocal answers during his deposition that left room for him to supplement and clarify his answers in his declaration. And, in other portions of the deposition, Mr. Shastry's testimony more clearly aligns with his statements in his declaration. For example, Mr. Shastry stated that he believed the LMA "would have reset my loan to zero" and, that shortly after signing the LMA, Wells Fargo sent multiple mortgage statements in the same month and "each one had a different dollar figure." Dkt. No. 76, Ex. C at 51:14-52:5. These statements are not "so markedly inconsistent" with his later statements in his declaration as to "constitute an obvious sham." *Winzer*, 916 F.3d at 472.

**B.    Mr. Shastry's statements are not impermissible expert opinions or legal conclusions.**

Next, U.S. Bank contends that Mr. Shastry's declaration should be struck because his statements are inadmissible expert opinions and legal conclusions. *See* Dkt. No. 88 at 3. U.S. Bank contends that, under Federal Rule of Evidence 702, Mr. Shastry cannot provide opinions on U.S. Bank's accounting evidence because he is not an expert in forensic accounting. *See id.* at 4-5. U.S. Bank also contends that Mr. Shastry's statements are inadmissible under Federal Rule of Evidence 701 because they are based on specialized knowledge and amount to improper legal conclusions. *See id.* at 5-6.

Mr. Shastry's declaration is not improper under Rules 701 or 702. Mr. Shastry is not attempting to designate himself as an expert witness. And U.S. Bank has not identified any statement or opinion that would require specialized knowledge within the scope of Rule 702, or any statements that cross the line from admissible lay opinions to inadmissible legal conclusions.

While Mr. Shastry "may not testify as an expert witnesses as to" accounting principles when looking at the bank records, he may "testify as [a] fact witness[] as to these matters or any other matters within [his] personal knowledge." *Sosa v. Citimortgage, Inc.*, No. 3:10-cv-2073-K, 2011 WL 10915874, at *1 (N.D. Tex. Aug. 15, 2011). Whether Plaintiffs made specific payments is a fact that may be within Mr. Shastry's knowledge. Mr. Shastry's unsubstantiated and conclusory statements regarding those payments may not amount to evidence sufficient to create a genuine

dispute of material fact, but it does not necessarily follow that they are inadmissible. *See First Colony*, 555 F.3d at 181 (explaining that "a summary assertion made in an affidavit is simply not enough proof to raise a genuine issue of material fact").

### C. Exhibits 1-J and 1-K are admissible at summary judgment; Exhibits 1-I and 1-O are not.

Finally, U.S. Bank contends that several of Plaintiffs' exhibits filed in support of their opposition should be struck because they are not authenticated and were not produced during discovery. *See* Dkt. No. 88 at 6-10. U.S. Bank requests the Court strike:

- Exhibit 1-I: Copy of Wells Fargo's payment history regarding Plaintiffs' mortgage with handwritten notes and highlights (a copy without the notes was produced by U.S. Bank and is referenced in its motion as Exhibit A-5);

- Exhibit 1-J: Calculation matrix created by Plaintiffs' counsel reflecting the dates of payments received and payments not honored by Wells Fargo according to the Wells Fargo payment history marked as Exhibit 1-I;

- Exhibit 1-K: Internet printout from the Dallas County Tax Assessor's Office webpage reflecting property tax payment records relating to the Property; and

- Exhibit 1-O: Copies of payment receipts from Wells Fargo reflecting payments made by Plaintiffs in May 2014 and June 2014.

*Id.* at 6.

### 1.    Exhibit 1-I

The Court should not consider the handwritten notes that have been added to Exhibit 1-I. It is unclear who wrote the notes, when they were written, and for what purpose they are being introduced. Although the payment history itself is admissible – indeed, U.S. Bank produced the same records in support of its motion – the Court

should not consider the added handwritten notes, highlighting, and commentary because they have not been authenticated and their relevance is unclear.

### 2.    Exhibit 1-O

The Court also should not consider Exhibit 1-O because Plaintiffs failed to produce the receipts during discovery. Federal Rule of Civil Procedure 26(a)(1)(A)(ii) provides that "a party must, without awaiting a discovery request, provide to the other parties ... a copy – or a description by category and location – of all documents, electronically stored information, and tangible things that the disclosing party has in its possession, custody, or control and may use to support its claims or defenses, unless the use would be solely for impeachment."

Federal Rule of Civil Procedure 37(c)(1) provides that, "[i]f a party fails to provide information or identify a witness as required by Rule 26(a) or (e), the party is not allowed to use that information or witness to supply evidence on a motion, at a hearing, or at a trial, unless the failure was substantially justified or is harmless." The disclosing (or late disclosing) party bears the burden of proving the failure to timely disclose was substantially justified or harmless. *See Sightlines, Inc. v. La. Leadership Institute*, No. 3:13-cv-00527-SDD-RLB, 2015 WL 77671, at *1 (M.D. La. Jan. 6, 2015).

In evaluating whether a Rule 26(a) violation is harmless, the Court looks at four factors: (1) the importance of the evidence; (2) the prejudice to the opposing party of including the evidence; (3) the possibility of curing such prejudice by granting a continuance; and (4) the explanation for the party's failure to timely disclose. *See Tex. A&M Research Found. v. Magna Transp., Inc.*, 338 F.3d 394, 402 (5th Cir. 2003). "The

court considers the four-factor test holistically. It does not mechanically count the number of factors that favor each side." *Klein v. Fed. Ins. Co.*, Nos. 7:03-cv-102-D & 7:09-cv-94-D, 2015 WL 1525109, at *3 (N.D. Tex. Apr. 6, 2015).

Here, Plaintiffs did not identify the receipts during initial disclosures. *See* Dkt. No. 88 at 8-9. And Plaintiffs failed to produce the receipts in response to U.S. Bank's Request for Production Nos. 10 and 11, which asked for any "[d]ocuments relating to any payment submitted or attempted to be submitted to pay the Loan," and "all documents … evidencing or reflecting each and every payment You submitted in connection with the Loan …." *Id.* at 9. In response to these requests for production, Plaintiffs answered that "[a]ll such documents in Plaintiffs' possession shall be produced," but Plaintiffs did not produce the receipts and "failed to supplement their responses …." *Id.*

Plaintiffs have not shown that their failure to produce the receipts was substantially justified or harmless. Plaintiffs did not file a response and offer no justification. And U.S. Bank has shown that it was prejudiced because it "was unable to inspect these documents prior to deposing Plaintiffs and moving for summary judgment." Dkt. No. 88 at 9. Based on these factors, the Court should find that Plaintiffs' violation was not substantially justified or harmless and thus should not consider Exhibit 1-O.

### 3.    Exhibit 1-J

The court may consider Exhibit 1-J because it summarizes admissible data. Summaries of data are generally admissible, *see* FED. R. EVID. 1006, if "the underlying

data itself is admissible into evidence." *Tolliver v. Litton Loan Servicing, LP*, No. SA-13-CA-127-FB, 2014 WL 12480012, at *10 (W.D. Tex. Aug. 4, 2014), *report and recommendation adopted*, No. SA-13-CA-0127-FB, 2014 WL 12479986 (W.D. Tex. Aug. 26, 2014).

U.S. Bank's offers no persuasive arguments to strike the exhibit. Exhibit 1-J summarizes the data in the Wells Fargo payment history attached to U.S. Bank's motion as Exhibit A-5, and U.S. Bank does not contest that the data in the payment history is admissible. Although the matrix was not disclosed or produced during discovery, earlier production or disclosure was not required, and any nondisclosure was otherwise harmless. Counsel for Plaintiffs noted during oral argument that the matrix was created solely to support their opposition to summary judgment, so the matrix did not exist during initial disclosures or when U.S. Bank served their requests for production. Further, U.S. Bank possessed the underlying data throughout the litigation and was therefore not prejudiced. And U.S. Bank's contention that the Court should not consider the exhibit because it fails to create a fact issue to defeat summary judgment confuses "admissibility with sufficiency, and sufficiency with certainty," and is not a reason to strike the exhibit. *Holcombe v. United States of America*, No. SA-18-cv-555-XR, 2021 WL 371749, at *7 (W.D. Tex. Feb. 2, 2021).

### 4.     Exhibit 1-K

Finally, the Court should consider Exhibit 1-K for purposes of summary judgment because the web printout is properly authenticated and Plaintiffs' failure to produce the printout during discovery is harmless.

"To satisfy the requirement of authenticating or identifying an item of evidence, the proponent must produce evidence sufficient to support a finding that the item is what the proponent claims it is." FED. R. EVID. 901(a). "Authentication is not a heavy burden." *Mockingbird Dental Grp., P.C. v. Carnegie*, No. 4:15-cv-404-A, 2015 WL 3824488, at *1 (N.D. Tex. June 19, 2015). "[C]ircumstantial evidence or testimony by a knowledgeable witness can be sufficient." *Thompson v. Bank of Am. Nat. Ass'n*, 783 F.3d 1022, 1027 (5th Cir. 2015). "In the case of an exhibit purported to represent an electronic source, such as a website or chat logs, testimony by a witness with direct knowledge of the source, stating that the exhibit fairly and fully reproduces it, may be enough to authenticate." *Id.*

Here, Mr. Shastry's declaration, in addition to the circumstantial evidence contained in the printout, is sufficient to authenticate Exhibit 1-K. In his declaration, Mr. Shastry stated that the printout is a "true and correct copy of property tax payment records from the Dallas County Tax Assessor's Office relating to Plaintiffs' property." Dkt. No. 82-1 at 4; *see Conceal City, LLC v. Looper Law Enf't, LLC*, No. 3:10-cv-2506-D, 2011 WL 5557421, at *7 (N.D. Tex. Nov. 15, 2011) (finding screenshot of company's website properly authenticated by "the affidavit of [the company's] founder, who aver[ed] that the screen shot [was] a 'true and correct copy of the document'"). And the printout includes the website's address, the date Plaintiffs printed the records, Plaintiffs' account number, and the Dallas County seal. *See* Dkt. No. 82-1, Ex. 1-K. These indicia of authenticity are enough to "support a finding that the evidence in

-17-

question is what [Plaintiffs] claim[] it to be." *In re McLain*, 516 F.3d 301, 308 (5th Cir. 2008).

Plaintiffs' failure to disclose the printout during discovery is harmless. It is not clear that Plaintiffs knew of or possessed the printout when initial disclosures were due, and the printout does not fall under any of U.S. Bank's requests for production. And, as Mr. Shastry notes, the printout is a copy of "publicly available tax records," which lessens any prejudice to U.S. Bank from not receiving the evidence earlier. Dkt. No. 82-1, Ex. 1 ¶ 3.

## II. Motion for summary judgment.

U.S. Bank is entitled to judgment as a matter of law because Plaintiffs have failed to support their breach of contract claims with any evidence that would create a genuine dispute of fact.

To succeed on a breach of contract claim under Texas law, a plaintiff must show "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff as a result of the defendant's breach." *Williams v. Wells Fargo Bank, N.A.*, 884 F.3d 239, 244 (5th Cir. 2018). U.S. Bank contends that the Court should enter judgment in its favor because Plaintiffs failed perform their obligation to make monthly payments, failed to produce evidence that U.S. Bank breached any obligation under the LMA, and failed to show compensable damages as a result of U.S. Bank's alleged breach.

### A.     Plaintiffs' default does not excuse U.S. Bank's performance.

Plaintiffs' breach of contract claim does not fail despite their failure to make the required payments under the LMA.

"[A] party's default under a contract will only excuse the other party's performance of the contract's terms that are dependent upon the promises that the defaulting party failed to perform." *Williams*, 884 F.3d at 244-45. Thus, when a borrower defaults on a loan by failing to make payments, the borrower's failure to perform will not bar a breach of contract claim if the borrower's promise to pay is independent of the obligations that the defendant allegedly breached. *See id.*

In this case, Plaintiffs' claim that U.S. Bank failed to provide notice is not barred even if Plaintiffs were in default. A lender's obligations when a borrower defaults – including providing notice – are independent of the borrower's obligation to make monthly payments. *See id.* at 245 (noting the defendant's "agreement in the deed of trust to give notice of foreclosure was independent of the [plaintiffs'] agreement under the note to pay monthly installments to satisfy the debt"). And, while several of Plaintiffs' allegations seem to be based on U.S. Bank's breach of pre-default obligations, U.S. Bank has provided no reason for why those obligations are dependent on Plaintiffs' obligation to make monthly payments. Without such a showing, the Court should decline to reject Plaintiffs' breach of contract claim for their failure to perform.

**B.    Plaintiffs fail to offer sufficient evidence to support their claims that U.S. Bank breached its obligations under the LMA.**

Plaintiffs have not offered sufficient evidence that U.S. Bank breached the LMA when it allegedly (1) failed to capitalize the escrow balance after they entered into the LMA, (2) failed to apply payments made to Plaintiffs' loan account during the bankruptcies, (3) declared the Loan to be in default without a proper basis, and (4) failed to give Plaintiffs notice and the opportunity to cure before foreclosing on the Property.

**1.    U.S. Bank complied with the LMA when it required payment on the escrow balance.**

Plaintiffs fail to show that, under the LMA, U.S. Bank wrongfully charged Plaintiffs for escrow advances. U.S. Bank provided evidence of the taxes and insurance premiums that it paid on behalf of Plaintiffs that made up the escrow balance, and the LMA does not state that Plaintiffs escrow balance would be capitalized and reduced to $0.00.

Under the LMA, the parties agreed that,

> [a]s of January 6, 2011, the new amount payable under the Note and the Security Instrument is U.S. $ 684,525.43 ("New Principal Balance"), consisting of the unpaid amount(s) loaned to Borrower by Lender plus any interest and other amounts capitalized with this modification. $118,876.88 of the New Principal Balance shall be deferred (the "Secondary Principal Balance") and I will not pay interest or make payments on this amount.

Dkt. No. 76, Ex. A-3 ¶ 1.

-20-

The parties also agreed that, "[i]n addition to monthly principal and interest payments, Borrower shall make monthly escrow deposits as defined in the Note. Escrow deposit payments may be subject to change in the future." *Id.* ¶ 2.

The language of the LMA does not support Plaintiffs' position that the escrow balance was supposed to be reduced to $0.00. Indeed, the agreement is silent as to the escrow balance other than to say that Plaintiffs were required to pay monthly deposits "as defined in the Note." *Id.* Plaintiffs do not cite any term in the LMA that would support their position. *See generally* Dkt. No. 88. Reading these terms in the light most favorable to Plaintiffs, there is no ambiguous language that would support their claim that U.S. Bank was required to reduce the escrow balance to $0.00.

And Plaintiffs fail to show that U.S. Bank breached the agreement by forcing them to pay the taxes and insurance premiums, or that U.S. Bank overcharged them. Under the Deed of Trust, Plaintiffs are required to pay a sum each month for escrow items, including taxes and assessments and insurance premiums. *See id.* Ex. A-3 ¶ 3. Notably, it also states that, if Plaintiffs "fail[] to pay an amount due for an escrow item, the lender may ... pay such amount and [Plaintiffs] shall then be obligated ... to repay Lender any such amount." *Id.* U.S. Bank complied with the Deed of Trust when it paid the past due taxes and insurance premiums, and it complied when it required Plaintiffs to repay those amounts. And U.S. Bank offered admissible evidence to support that it paid $99,197.58 in escrow advances. *See* Dkt. No. 76, Ex. A ¶ 8.

Plaintiffs' evidence does not create a dispute of fact. Exhibit 1-K (the internet printout showing tax records for the Property) shows only the county taxes paid. The

printout lacks a complete accounting of all the taxes and other charges paid by U.S. Bank, including city property taxes and insurance payments, and therefore does not create a genuine dispute of material fact regarding the escrow amount.

> **2.    Plaintiffs fail to show any payments that U.S. Bank did not credit to their loan account.**

Plaintiffs provide no evidence to show that U.S. Bank did not apply payments to their account. U.S. Bank has provided bank records that shows that it credited all of Plaintiffs' payments, and Plaintiffs failed to produce any evidence that shows there is a genuine dispute of material fact.

The September 19, 2016 letter sent to Plaintiffs from Wells Fargo shows that all of Plaintiffs' payments were credited. *See* Dkt. No. 76, Ex. A-4. The letter described in detail each of the payments Plaintiffs made and how and when they were applied to their account. *See id.* And the letter included a complete payment history that shows this information in detail. *See id.*

Plaintiffs' unsupported allegations do not create a genuine factual dispute. Plaintiffs allege that Wells Fargo failed to credit $76,830.82 in payments made during their bankruptcies, *see* Dkt. No. 82 at 13; $58,771.41 paid as a down payment for the LMA, *see id.* at 9; and $326,926.39 in payments over the entire course of the loan, *see id.* at 13. But the September 19, 2016 letter accounts for the payments during the bankruptcy, noting that payments made during the bankruptcy were placed into an "unapplied funds account," and that those payments were applied to the mortgage beginning in August 2015. Dkt. No. 76, Ex. A-4 at 4. And Plaintiffs offer no admissible

evidence that the other payments were not credited. Presumably, evidence such as their own bank records would show that the down payment and additional payments were made, but Plaintiffs "presented no evidence of payment – even though any such evidence should be available" to them. *Fath v. BAC Home Loans*, No. 3:12-cv-1755-O, 2013 WL 3203092, at *5 (N.D. Tex. June 25, 2013); *see* Dkt. No. 76, Ex. C at 42:11-14 (Mr. Shastry testifying that Plaintiffs did not investigate their own bank statements).

The only admissible evidence that Plaintiffs offered regarding payments made and credited is the Wells Fargo payment history. *See* Dkt. No. 82-1, Ex. 1-I. But Plaintiffs offer no reason why that document, which shows that all payments received were credited, is not correct. To rebut U.S. Bank's evidence, Plaintiffs seem to rely only on Mr. Shastry's claim that U.S. Bank's "accounting on our mortgage is incorrect." *Id.* Ex. 1 ¶ 17. But "[u]nsubstantiated assertions, improbable inferences, and unsupported speculation are not sufficient to defeat a motion for summary judgment." *Brown,* 337 F.3d at 541.

And, even if the Court considers the receipts that Plaintiffs failed to produce in discovery, the outcome would still be the same. Plaintiffs seem to offer the receipts to show that U.S. Bank failed to credit payments in May and June of 2014. *See* Dkt. No. 82-1, Ex. 1-O. While the receipts may support Plaintiffs' assertion that the payments were not immediately applied to the loan, the September 19, 2016 letter and the Wells Fargo payment history show that these payments were eventually credited. *See* Dkt. No. 76, Ex. A-4 at 36, 62-65.

-23-

### 3.     U.S. Bank did not erroneously declare Plaintiffs in default.

There is no evidence in the record that U.S. Bank erroneously declared Plaintiffs in default in violation of the LMA. U.S. Bank shows that, after signing the LMA, three of Plaintiffs' payments were returned for insufficient funds. *See* Dkt. No. 76, Ex. A ¶ 11. Plaintiffs' contentions that they did not default because they made good faith efforts to pay, and that U.S. Bank made it impossible for them to meet the payments by demanding payments far above the amount stated in the LMA, *see* Dkt. No. 82 at 17, are not supported by the evidence and do not create a genuine dispute of material fact.

Under the Note, Plaintiffs agreed that, if they failed "to pay the full amount of each monthly payment on the date it is due, [they] will be in default." Dkt. No. 76, Ex. A-1 at 8. The documents that U.S. Bank submitted as summary judgment evidence "reflect that Plaintiffs defaulted on the modified Loan after Wells Fargo returned three (3) monthly payments due to insufficient funds in or about February 2011." *Id.* Ex. A ¶ 11.

Plaintiffs do not contest that they failed to pay the entire monthly payments, *see* Dkt. No. 82 at 9-11, 17; rather, they argue that the amounts demanded by U.S. Bank were higher than allowed under the LMA and, therefore, their failure to pay the amounts requested did not constitute a default, *see id.* at 17-18.

But Plaintiffs fail to offer any support for the proposition that the monthly payments were fixed. The LMA states that Plaintiffs' "monthly principal and interest payments may change in accordance with the terms of the Note." Dkt. No. 76, Ex. A-4

-24-

¶ 2. And Plaintiffs point to no specific term in the Note that was breached. Thus, U.S. Bank could raise the payment amounts under the LMA, and U.S. Bank did not make it impossible for Plaintiffs to perform.

### 4.    U.S. Bank provided notice of default.

Plaintiffs do not support their claim that U.S. Bank breached its obligation to provide notice of default with any arguments or evidence.

As summary judgment evidence, U.S. Bank attached the three notices of default that it sent to Plaintiffs. *See* Dkt. No. 76, Exs. B-1, B-2, B-3. The notices provided the requisite information under the terms of the Deed of Trust. *See id.* Plaintiffs do not make any arguments supporting this claim in their response, and they offer no evidence showing the notices were somehow deficient. *See generally* Dkt. No. 82. Plaintiffs, therefore, have failed to meet their burden "to identify evidence sufficient to create a genuine issue of material fact." *Castillo v. PennyMac Loan Servs., LLC*, No. 3:18-cv-396-M-BH, 2019 WL 4603752, at *9 (N.D. Tex. Aug. 8, 2019), *report and recommendation adopted*, No. 3:18-cv-396-M-BH, 2019 WL 4597558 (N.D. Tex. Sept. 23, 2019) (granting summary judgment where plaintiffs did "not argue, or provide any evidence, that Defendant did not send the requisite statutory notices to them, or that they did not receive those notices").

### C.    Plaintiffs fail to allege adequate damages.

Finally, the damages Plaintiffs seek are not sufficient to maintain their breach of contract claim.

First, Plaintiffs seek the "costs incurred … in protecting the house from foreclosure, the diminished credit score resulting from being unjustly reported delinquent, and the time taken in their pursuit of employment due to the distractions from this on-going dispute." Dkt No. 52 ¶ 13. But, under Texas law, "expenses of litigation" – including "a litigant's loss of time" – "are not recoverable as damages unless expressly provided by statute or contract." *Shore Chan Bragalone Depumpo LLP v. Greenwich Ins. Co.*, 904 F. Supp. 2d 592, 601 (N.D. Tex. 2012) (quoting *Eberts v. Businesspeople Personnel Servs., Inc.*, 620 S.W.2d 861, 863 (Tex. Civ. App. - Dallas 1981, no writ)). Plaintiffs have not shown any statute or term in the LMA that would allow them to recover these claimed expenses.

And Plaintiffs' "diminished credit score" alone is not sufficient damages. "To recover damages for a loss of credit reputation, a plaintiff must show that a loan was actually denied or a higher interest rate was charged." *Pourmemar v. Chase Home Fin., LLC*, No. 01-10-00474-cv, 2011 WL 5026189, at *3 (Tex. App. – Hous. [1st Dist.] Oct. 20, 2011, no pet.) (quotation omitted). Here, Plaintiffs provide no evidence that their credit score went down, and offer no allegations that they were denied a loan or charged a higher interest rate. Plaintiffs lone allegation in their Complaint that U.S. Bank caused them a diminished credit score is not enough to meet the damages threshold at summary judgment. *See id.* (finding statement in plaintiff's affidavit that his "credit score went down" was "no evidence of actual damages" and did not raise a fact issue at summary judgment).

Second, Plaintiffs seek the difference between the foreclosure sale price and the fair market value of the Property. *See* Dkt No. 52 ¶ 14. Although this type of damages is generally available when a lender breaches a deed of trust and the property is sold for an inadequate price, "[t]he recovery of damages is not appropriate … where title to the property has not passed to a third party and the borrower's possession of the property has not been materially disturbed." *Wells Fargo Bank, N.A. v. Robinson*, 391 S.W.3d 590, 594 (Tex. App. – Dallas 2012, no pet.). Here, Plaintiffs' possession of the home has been undisturbed since the foreclosure sale, and the Property was not sold to a third party. Thus, monetary damages for the difference in sale and market price are not available.

Third, Plaintiffs seek attorneys' fees. *See* Dkt. No. 52 ¶ 15. Although attorneys' fees may be awarded to a successful plaintiff, *see* TEX. CIV. PRAC. & REM. CODE §§ 37.009, 38.001(8), they do not constitute actual damages sufficient to sustain a breach of contract claim, *see Vianet Grp. PLC v. Tap Acquisition*, No. 3:14-cv-3601-B, 2016 WL 4368302, at *9 (N.D. Tex. Aug. 16, 2016).

Because Plaintiffs have failed to allege any compensable damages, their breach of contract claim must fail.

### Recommendation

Plaintiffs have failed to raise a factual issue as to whether U.S. Bank breached any contractual obligation and, as a matter of law, have failed to allege any compensable damages. Because no reasonable jury could find in Plaintiffs' favor, the Court should grant U.S. Bank's Motion for Summary Judgment [Dkt. No. 80].

-27-

A copy of these findings, conclusions, and recommendation shall be served on all parties in the manner provided by law. Any party who objects to any part of these findings, conclusions, and recommendation must file specific written objections within 14 days after being served with a copy. *See* 28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b). In order to be specific, an objection must identify the specific finding or recommendation to which objection is made, state the basis for the objection, and specify the place in the magistrate judge's findings, conclusions, and recommendation where the disputed determination is found. An objection that merely incorporates by reference or refers to the briefing before the magistrate judge is not specific. Failure to file specific written objections will bar the aggrieved party from appealing the factual findings and legal conclusions of the magistrate judge that are accepted or adopted by the district court, except upon grounds of plain error. *See Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1417 (5th Cir. 1996).

DATED: February 11, 2021

DAVID L. HORAN
UNITED STATES MAGISTRATE JUDGE